Glenna Butler, Chairperson Arkansas Towing Recovery Board P.O. Box 8285 Searcy, AR 72143
Dear Chairperson Butler:
I am writing in response to your request for my opinion on the following questions:
 1. What implications, if any, does Act 695 of 1999 have upon A.C.A. § 27-50-1208?
 2. Would a vendor's lien take priority over the possessory lien described in A.C.A. § 27-50-1208?
RESPONSE
In response to your first question, it is my opinion that as a result of the enactment of Act 695, the lien defined in A.C.A. § 27-50-1208 is subordinate to any perfected lien of a financial institution or vendor of automobiles, trucks, tractors, and all other motor-propelled conveyances for any claim for the balance of a purchase-money loan. The answer to your second question is, in all likelihood, "yes," if the vendor's lien has been properly perfected.
Question 1: What implications, if any, does Act 695 of 1999 haveupon A.C.A. § 27-50-1208?
Section 27-50-1208 of the Arkansas Code (1999 Supp.) provides as follows:
 (a) The towing and storage firm shall have a possessory lien on the vehicle and its contents for all reasonable charges of towing, recovery, and storage for which the owner is liable.
(b) The lien shall be perfected by:
(1) Maintaining possession; and
 (2) Giving notice to the owner or owners and lienholders as prescribed in § 27-50-1101, informing the owners and lienholders that the vehicle may be sold at public auction if not claimed within the time period prescribed in § 27-50-1101. The towing and storage firm shall obtain the names and addresses of the owners and lienholders, if any, from the motor vehicle records of the state in which the vehicle is titled or registered.
 (c) Any towing and storage firm failing to give the notice to the owner or owners and lienholders as prescribed in § 27-50-1101 shall be in violation of the subchapter and shall be subject to the civil penalties as prescribed by the Arkansas Towing and Recovery Board or to a suspension or revocation of any towing license or permit, or both.
This statute is contained in the subchapter captioned "Removal of Unattended or Abandoned Vehicles," which applies only to nonconsensual towing and imposes criminal sanctions for towing abuse. A.C.A. § 27-50-121 (1999 Supp.).
You have asked how this statute is affected by Act 695 of 1999, which is codified at A.C.A. § 18-45-202(b) and which provides as follows:
 The lien provided for in this subchapter shall be subject to the perfected lien of a financial institution or vendor of automobiles, trucks, tractors, and all other motor-propelled conveyances for any claim for balance of purchase money due thereon.
(Emphasis added.) The question, then, is whether the lien set forth in A.C.A. § 27-50-121 is subject to the subordination defined in Act 695. To answer this question, I must consider the scope of the lien defined in the subchapter containing A.C.A. § 18-45-202(b). Section 18-45-201 of the Code defines the lien as follows:
 All blacksmiths, horseshoers, wheelwrights, automobile repairmen, airplane repairmen, machine shops, farm implement repairmen, automotive storagemen, firms, and corporations who perform, or have performed, work or labor for any person, firm, or corporation; who have furnished any materials or parts for the repair of any vehicle or farm implement, including tires and all other motor accessories and bodies for automobiles, trucks, tractors, airplanes, and all other motor propelling conveyances; or who store on their premises any automobile, truck, tractor, airplane, or other automotive vehicle, if unpaid, shall have an absolute lien upon the product or object of their labor, repair, or storage and upon all wagons, carriages, automobiles, trucks, tractors, airplanes, farm implements, and other articles repaired or stored and all horses or other animals shod by them, for the sums of money due for their work, labor, storage, and for materials furnished by them and used in the product, the shoeing and repairing, including the furnishing of tires and all other accessories and bodies for automobiles, trucks, tractors, airplanes, and all other motor-propelled vehicles.
(Emphasis added.)
As previously noted, A.C.A. § 18-45-202(b) clearly provides that the lien just described is subordinate to any perfected purchase-money lien held by a financial institution or vendor of motor vehicles. I must consequently address whether the automotive storage activity described in A.C.A. § 18-45-201 includes the activity described in A.C.A. §27-50-1208. If it does, in my opinion the liens described in both statutes would be subordinate to any perfected purchase-money lien held by an institutional lender or vendor of motor vehicles.
Several questions arise in considering the scope of A.C.A. § 18-45-201. First, does it cover nonconsensual impoundment of the sort described in A.C.A. § 27-50-1208? Second, if so, does it cover towing service? Finally, if it covers both, why did the legislature enact two statutes covering the same activity? I will address these questions in turn below.
With respect to the first question, in my opinion the highlighted passage preceding the first semicolon above in A.C.A. § 18-45-201 refers to voluntary storage, whereas the highlighted passage following the first semicolon includes involuntary impoundment. To conclude otherwise would render the second highlighted passage merely repetitive. It follows that a storageman impounding a vehicle pursuant to statute is entitled to the same lien as one acting upon the request of the vehicle's owner.
With respect to the second question, although there is no reference to "towing" in A.C.A. § 18-45-201, I believe that towing should nevertheless be considered an aspect of "automotive storage." Black's Law Dictionary defines "storage" as "[s]afekeeping of goods in a warehouse or other depository." The American Heritage Dictionary defines the term as "the act of storing goods." Neither definition precludes including the retrieval of goods for storage as an element of a storageman's task, and the fact that "automotive storagemen" are all but invariably towing services dictates including that activity. Moreover, the statute imposes a lien on "labor" as well as "storage," reinforcing the conclusion that towing should be considered an element of storage.
Finally, in my opinion there is nothing perplexing about the fact that the lien for nonconsensual towing is defined in two statutes. The possessory lien described in A.C.A. § 27-50-1208 is contained in a subchapter that comprehensively sets forth the procedure for and the implications of removing, impounding and, if necessary, auctioning off unattended or abandoned vehicles — all under the close supervision of the Arkansas Towing and Recovery Board. It is perfectly understandable that this self-contained subchapter acknowledges the storageman's lien protection without exhaustively defining its scope. It is likewise understandable that the broader issue of where such a lien should be located in terms of priority is addressed in A.C.A. § 18-45-201, which generally defines the scope and priority of all artisans' and repairmen's liens, including those of "automotive storagemen." In short, I consider the lien described in A.C.A. § 27-50-1208 to be precisely the same as the lien established for automotive storagemen in A.C.A. § 18-45-201, and I consider both to be subject to the subordination defined in A.C.A. §18-45-202(b).
Question 2: Would a vendor's lien take priority over the possessory liendescribed in A.C.A. § 27-50-1208?
As reflected in my response to your first question, I believe that the answer to your question is "yes," so long as the vendor has properly perfected its lien.
For your information, I am enclosing Op. Att'y Gen. 1999-446, which addresses the constitutionality of Act 695.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosure